IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                                                  24-CR-134

COREY ROBERT DODGE,

            Defendant.

## PLEA AGREEMENT

The defendant, COREY ROBERT DODGE, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.  THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and to plead guilty to a two-count Information which charges:

    a.  In Count 1, a violation of Title 18, United States Code, Section 1029(a)(3) (possession of 15 or more unauthorized access devices with intent to defraud), for which the maximum possible sentence is a term of imprisonment of 10 years, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of 3 years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

      b.      In Count 2, a violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute a mixture and substance containing cocaine), the maximum possible sentence is a term of imprisonment of 20 years, a fine of $1,000,000, a mandatory $100 special assessment, and a term of supervised release of at least 3 years and up to life.

      c.      The defendant understands that the penalties set forth in this paragraph are maximum penalties that can be imposed by the Court at sentencing.

2.      The defendant understands that as to Count 2, the Court may enter an order of community restitution in an amount not to exceed any fine imposed pursuant to Title 18, United States Code, Section 3663(c) and Sentencing Guidelines § 5E1.1(d).

3.      The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years for Count 1 and up to 2 years for Count 2, for a total of 4 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

4. The defendant understands the nature of the offenses set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

### Count 1

a. The defendant possessed 15 or more unauthorized access devices;

b. The defendant acted knowingly, willfully, and with intent to defraud; and

c. Interstate or foreign commerce was affected by the defendant's actions.

### Count 2

a. The defendant possessed a controlled substance;

b. The defendant knew that he possessed a controlled substance; and

c. The defendant intended to distribute controlled substances.

## FACTUAL BASIS

5. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

### Count 1

a. Genesis Market ("Genesis") was an online market whose operators compiled stolen data (such as computer and mobile device identifiers, email addresses, usernames, and passwords) from malware-infected computers and packaged the stolen data for sale. This stolen data constitutes "unauthorized access devices" within the meaning of Title 18, United States Code, Sections 1029(e)(1) and 1029(e)(3).

b. Genesis users could gain access to Genesis after being invited on a cybercriminal forum or by an individual who already had a Genesis account. During the time periods relevant to this Plea Agreement,

           Genesis' data was stored on servers located in two different countries, neither of which was the United States.

c.      Genesis sold stolen data in the form of "bots" or "packages." A single bot or package contained data stolen from a single malware-infected device. Thus, a single bot or package typically included a number of stolen account credentials associated with a single device. Genesis users paid for packages or bots using cryptocurrency.

d.      The defendant, COREY ROBERT DODGE, lives in Buffalo, New York, in the Western District of New York. On May 26, 2020, and April 3, 2020, the defendant deposited, in total, approximately $289 worth of bitcoin in a Genesis account that he had created.

e.      The defendant used the funds he deposited in his Genesis account to purchase multiple packages of unauthorized access devices. Specifically, between on or about March 26, 2020, and on or about May 30, 2021, the defendant purchased 14 packages from Genesis. Those packages contained unauthorized access devices.

f.      By April 2, 2020, the defendant had purchased more than 15 unauthorized access devices from Genesis. The defendant possessed those unauthorized access devices with the intent to defraud. Because Genesis' servers were located outside of the United States, the defendant's purchase of unauthorized access devices affected foreign commerce.

## Count 2

a.      On or about April 3, 2023, the Federal Bureau of Investigation (FBI) executed a search warrant at the defendant's residence in Buffalo, New York, to search for evidence related to the defendant's use of Genesis Marketplace. In the course of searching the residence for such evidence, the FBI also found and seized the following controlled substances:

      i.      Approximately 0.958 grams of a mixture and substance containing Fentanyl;

      ii.     Approximately 30.465 grams of cocaine and a mixture and substance containing cocaine;

      iii.    Approximately 10.8 grams of 3,4-Methylenedioxymethamphetamine (MDMA);

  iv. Approximately 21.360 grams of 3,4-Methylenedioxyamphetamine (MDA) Hydrochloride;

  v. Approximately 0.529 grams of Methamphetamine Hydrochloride; and

  vi. Approximately 864 grams of Ketamine;

b. On April 3, 2023, the FBI also seized scales and packaging material from the defendant's residence.

c. The defendant admits that he possessed these controlled substances with the intent to distribute them.

d. As part of relevant conduct, the defendant admits that he also possessed the following controlled substances on or about July 14, 2023, and that he did so while he was under the supervision of the United States Probation and Pretrial Services Office:

  vii. Approximately 0.79 grams of Fentanyl;

  viii. Approximately 20.15 grams of cocaine;

  ix. Approximately 114.24 grams of 3,4-Methylenedioxymethamphetamine (MDMA);

  x. Approximately 37 grams of 3,4-Methylenedioxyamphetamine (MDA) Hydrochloride; and

  xi. Approximately 1.129 kg of Ketamine

### III. SENTENCING GUIDELINES

6. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## COUNT 1

### BASE OFFENSE LEVEL

7.      The government and the defendant agree that Guidelines § 2B1.1(a)(2) applies to the offense of conviction and provides for a base offense level of 6.

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 2 ADJUSTMENTS

8.      The government and the defendant agree that the following specific offense characteristics apply:

   a.   the two-level increase pursuant to Guidelines § 2B1.1(b)(2)(A)(i) (offense involved more than 10 victims);

   b.   the two-level increase pursuant to Guidelines § 2B1.1(b)(11)(B)(i) (offense involved trafficking of unauthorized access devices).

9.      The government maintains that the following specific offense characteristics apply to Count 1:

   a.   § 2B1.1(b)(1)(J) and Application Note 3(F)(i): the total loss (including relevant conduct) was in excess of $3,500,000 but less than $9,500,000 (namely, $4,428,000) and thus there is an eighteen-offense level increase; and

   b.   the two-level increase pursuant to Guidelines § 2B1.1(b)(10)(C) (offense involved sophisticated means).

10.     The defendant specifically reserves the right at the time of sentencing to argue that Guideline § 2B1.1(b)(1)(J) and Application Note 3(F)(i) and Guideline § 2B1.1(b)(10)(C) do not apply. The government reserves the right to oppose the defendant's argument.

## ADJUSTED OFFENSE LEVEL

11. Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for Count 1 is:

    a. 30 (if the Court agrees with the government's Guidelines calculations); or

    b. 12 (if the Court agrees with the defendant's Guidelines calculations).

## COUNT 2

### BASE OFFENSE LEVEL

12. The government and the defendant agree that Guidelines §§ 2D1.1(a)(5) and 2D1.1(c)(8) apply to the offense of conviction and provide for a base offense level of 24.

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 2 ADJUSTMENTS

13. The government and the defendant agree that the following specific offense characteristic applies:

    a. the two-level decrease pursuant to Guidelines § 2D1.1(b)(18).

### U.S.S.G. CHAPTER 3 ADJUSTMENTS

14. The government and the defendant agree that the following adjustment to the base offense level applies:

    a. the three-level increase pursuant to Guidelines § 3C1.3 (commission of offense while on release).

## ADJUSTED OFFENSE LEVEL

15. Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for Count 2 is 25.

## COMBINED ADJUSTED OFFENSE LEVEL

16. The government and the defendant agree that, pursuant to Guidelines §§ 3D1.1 – 3D1.4, that the combined adjusted offense level for Count 1 and Count 2 is:

   a. 31 (if the Court agrees with the government's Guidelines calculations); or

   b. 25 (if the Court agrees with the defendant's Guidelines calculations).

## ACCEPTANCE OF RESPONSIBILITY

17. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of:

   a. 28 (if the Court agrees with the government's Guidelines calculations); or

   b. 22 (if the Court agrees with the defendant's Guidelines calculations).

## CRIMINAL HISTORY CATEGORY

18. It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the

defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

19.  Furthermore, it is the understanding of the government and the defendant that the defendant meets the criteria for the two-level downward adjustment of Guidelines §4C1.1(a) (Adjustment for Certain Zero Point Offenders). The application of this adjustment results in a total offense level of 26 (if the Court agrees with the government's Guidelines calculations) or 20 (if the Court agrees with the defendant's Guidelines calculations).

## GUIDELINES' APPLICATION, CALCULATIONS, AND IMPACT

20.  It is the understanding of the government and the defendant that:

   a. if the Court agrees with the government's Guidelines calculation, with a total offense level of 26 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of **63 to 78 months**, a fine of **$25,000 to $1,000,000**, and a period of supervised release of **1 to 3 years**; and

   b. if the Court agrees with the defendants' Guidelines calculation, with a total offense level of 20 and a criminal history category of I, the defendant's sentencing range would be a term of imprisonment of **33 to 41 months**, a fine of **$15,000 to $1,000,000**, and a period of supervised release of **1 to 3 years.**

   c. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

21.  The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range.

This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

22.     The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

23.     In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

## IV.     STATUTE OF LIMITATIONS

24.     In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.  REMOVAL

25.  The defendant represents that he is a citizen of the United States. However, if the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI.  GOVERNMENT RIGHTS AND OBLIGATIONS

26.  The defendant understands that the government has reserved the right to:

a.  provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.  respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.  advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment;

d.  modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor;

e.  oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

27.  At sentencing, the government will move to dismiss the Criminal Complaint pending against the defendant under 23-MJ-5097-MJR.

## VII. APPEAL RIGHTS

28. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than a term of imprisonment of 78 months, a fine of $1,000,000, and a term of supervised release of life, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

29. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

30. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than a term of imprisonment of 63 months, a fine of $25,000, and a term of supervised release of 3 years, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## IX. FORFEITURE PROVISIONS

31. As a condition of the plea, the defendant agrees not to contest any forfeiture or abandonment proceeding that may be brought by the government and agrees to immediately criminally forfeit all of the defendant's right, title and interest to any and all property which is subject to forfeiture pursuant to Title 21, United States Code, Section 853(a)(1), and Title 21, United States Code, Section 853(a)(2) which is in the possession and control of the defendant or the defendant's nominees. That property includes (the "Seized Currency"):

*$27,000* [handwritten annotation]

**CURRENCY:**

a. The sum of twenty-seven thousand, seven hundred and twenty-one dollars ($27,721.00) in United States currency seized on or about April 4, 2023 in Buffalo, New York. The defendant further agrees that this amount is properly forfeitable pursuant to Title 21, United States Code, Section 853, as the $27,721.00 was proceeds of the defendant's illegal activities.

32. The defendant agrees to withdraw his petition and/or claim filed for the Seized Currency with the Federal Bureau of Investigation on October 3, 2023 and agrees not to file any additional petitions or claims.

33. As a further condition of the plea, the defendant agrees not to contest any forfeiture or abandonment proceeding that has been brought by the government and agrees to immediately criminally forfeit all of the defendant's right, title and interest to any and all properties which are subject to forfeiture pursuant to Title 18, United States Code, Section 1029(c)(1)(C), which is in the possession and control of the defendant or the defendant's nominees. That property includes (the "Seized Electronics"):

**ELECTRONIC EQUIPMENT:**

    a.    One (1) MY FLASH USB;

    b.    One (1) Sentey Desktop Tower;

    c.    One (1) HP Desktop Tower, Model 6YR56AA#ABA bearing serial number 2MO1163TF3;

    d.    One (1) Apple iPhone in red case;

    e.    One (1) Apple iPhone in black case;

    f.    One (1) Custom Tower bearing serial number 2009Y001080; and

    g.    One (1) HP Desktop Tower, Model POD52UT#ABA bearing serial number MXL635200M.

34. The defendant agrees not to file a claim or petition seeking remission or contesting the forfeiture of the Seized Currency and the Seized Electronics (collectively hereinafter, the "Seized Assets") in any administrative or judicial (civil or criminal) proceeding. The defendant further agrees not to assist any person or entity in the filing of any claim or petition seeking remission or contesting the forfeiture of the Seized Assets in any administrative or judicial (civil or criminal) forfeiture proceeding. Further, if any third party files a claim or petition to the Seized Assets, the defendant will assist the government in litigating such claim.

35. After the acceptance of the defendant's guilty plea, and pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the Court will issue a Preliminary Order of Forfeiture for the Seized Assets. The defendant hereby waives any right to notice of such Preliminary Order of Forfeiture. The defendant further consents and agrees that the Preliminary Order of Forfeiture and a Final Order of Forfeiture shall issue and become final as to the defendant prior to sentencing and agrees that it shall be made part of the defendant's

sentence and included in the judgment pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure. If administrative forfeiture is complete on or before sentencing, a final order of forfeiture will not be obtained for the Seized Assets.

36. The defendant further agrees to waive any time restrictions or requirements as provided in Title 18, United States Code, Section 983, any notice provisions in Rules 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of any of the property forfeited hereunder, including notice set forth in an indictment, information or administrative notice. The defendant understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J), at the time the guilty plea is accepted. The defendant further agrees that the forfeiture of the Seized Assets as authorized herein shall not be deemed an alteration of the defendant's sentence. Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, any income taxes or any other penalty that the Court may impose upon the defendant in addition to forfeiture and shall survive bankruptcy.

37. The defendant knowingly, intelligently, and voluntarily waives his right to a jury trial on the forfeiture of the Seized Assets. The defendant knowingly, intelligently, and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of the Seized Assets in any proceeding, whether constitutional or statutory, including but not limited

15

to, any defenses based on principles of double jeopardy, as to this criminal proceeding or any related civil or administrative proceeding, the Ex Post Facto clause of the Constitution, any applicable statute of limitations, venue, or any defense under the Eighth Amendment, including a claim of excessive fines.

38. The defendant agrees that the Seized Assets is subject to forfeiture and waives any and all statutory and constitutional rights, including but not limited to time restrictions and notice provisions with respect to the final disposition or forfeiture of the Seized Assets.



39. The defendant agrees that in the event this plea agreement is voided for any reason, the agreement for forfeiture, abandonment and disposition of the Seized Assets survives and shall be given full force and effect. The failure of the defendant to forfeit any property as required under this agreement, including the failure of the defendant to execute any document to accomplish the same on timely notice to do so, may constitute a breach of this agreement.

40. The defendant agrees that for any reason, in any pleadings before the Court or any order of the Court, to include but not limited to the Preliminary and/or Final Order of Forfeiture and the Judgment and Commitment, if the government fails to properly identify an item to be forfeited, fails to include any item that is forfeitable under the applicable forfeiture statute in this case or includes a clerical or technical error, the defendant will consent and not oppose any effort by the government to amend, correct or add to the description/list of items subject to forfeiture in this case. Additionally, to the extent necessary and at the

discretion of the United States Attorney's Office, the defendant further agrees in the alternative, to the abandonment or civil forfeiture of any items that were excluded from the original description of items to be forfeited. Finally, if not specially identified or listed above, the defendant agrees to the abandonment of any and all cellular phones, computers and electronic equipment seized by law enforcement in this case.

### X.  TOTAL AGREEMENT AND AFFIRMATIONS

41. This plea agreement represents the total agreement between the defendant, COREY ROBERT DODGE, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

TRINI E. ROSS
United States Attorney
Western District of New York

BY: _____
CHARLES M. KRULY
Assistant United States Attorney
Dated: ~~September~~ October 29, 2024

I have read this agreement, which consists of pages 1 through 18. I have had a full opportunity to discuss this agreement with my attorney, Justin D. Ginter, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____  
COREY ROBERT DODGE  
Defendant  
Dated: ~~September~~ October 29, 2024

_____  
JUSTIN D. GINTER, ESQ.  
Attorney for the Defendant  
Dated: ~~September~~ October 29, 2024