UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,
                                    *Plaintiff,*

            v.                                      Case Number:  24-CR-134

COREY ROBERT DODGE
                                    *Defendant.*

_____

**DEFENDANT COREY ROBERT DODGE'S SENTENCING MEMORANDUM AND
LETTERS IN AID OF SENTENCING**

DATED:        Buffalo, New York
              April 15, 2025

                              Respectfully submitted,

                              JUSTIN D. GINTER, ESQ.
                              LIPSITZ GREEN SCIME CAMBRIA LLP
                              Attorneys for Defendant
                              COREY DODGE
                              Office and Post Office Address
                              42 Delaware Avenue – Suite 120
                              Buffalo, New York 14202
                              (716) 849-1333
                              jginter@lglaw.com

TO:     Charles M. Kruly, Esq.
        Assistant United States Attorney
        138 Delaware Avenue
        Buffalo, NY 14202

**PRELIMINARY STATEMENT**

On October 29, 2024, Corey Robert Dodge appeared before the Honorable John L. Sinatra, Jr., United States District Judge, waived indictment and plead guilty to one count of possession of 15 or more unauthorized access devices with intent to defraud in violation of Title 18, United States Code, Section 1029(a)(3), and one count of possession with intent to distribute a mixture and substance containing cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).   In the plea agreement, the government contended that the enhancements under Guideline § 2B1.1(b)(1)(J) applying Application Note 3(f)(i) and Guideline § 2B1.1(b)(10)(C) applied to the offense of conviction provided for an adjusted offense level of 30.  However, in the Presentence Report ("PSR"), probation officers applied the enhancement under Guideline § 2B1.1(b)(10)(C), but declined to apply the enhancement under Guideline § 2B1.1(b)(1)(J) applying Application Note 3(f)(i), resulting in an offense level 14.

As noted in defense counsel's objections to the PSR and explained further below, Mr. Dodge's total offense level should be reduced to an offense level of 12 because the enhancements under Guideline § 2B1.1(b)(1)(J) applying Application Note 3(f)(i) and Guideline § 2B1.1(b)(10)(C) do not apply.  The Guidelines provide that the sophisticated means enhancement applies in cases that involve "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense."  U.S.S.G § 2B1.1, application n. 9(B).  Since Mr. Dodge's offenses did not involve any complex methods of execution or concealment, the enhancements under the Guidelines are inapplicable.

This memorandum is respectfully submitted on Mr. Dodge's behalf in efforts to provide the Court with an accurate depiction of his character and circumstances before the Court makes the important decision regarding his sentencing and future.  Mr. Dodge respectfully requests that

the Court impose a fair and reasonable sentence that is sufficient, but no greater than what is necessary.  Further, counsel asks that Mr. Dodge be sentenced to time served because his nearly 22 months served in custody thus far has been productive towards significant self-improvement.

## MR. DODGE'S OFFENSE OF CONVICTION

Since 2018, the FBI has been investigating Genesis Market, an illicit online marketplace that allows users to purchase stolen data on the "dark web."  The "packages" of stolen data consist of online accounts and their credentials, which allow the purchaser's ability to access data and disguise as the victim's device.  Pursuant to an investigation, Mr. Dodge was identified as a user of Genesis Market and was found to have purchased 14 packages from March 26, 2020, through April 3, 2020. Upon executing a search warrant, FBI agents seized several electronic devices and papers from Mr. Dodge's home, as well as several controlled substances.

Following his arrest, Mr. Dodge was helpful and compliant with authorities.  When interviewed by FBI agents, Mr. Dodge explained that he learned about Genesis Market through an online advertisement and was invited to join by an unnamed individual on a private online chatroom.  Mr. Dodge admitted to purchasing stolen credentials in efforts to disguise as the true owner of the accounts.  Despite this, he noted that he was never able to successfully use the credentials to log into the victim's accounts. Without making any excuses for his behavior, Mr. Dodge accepted all responsibility for his actions.  He expressed that he knew what he did was wrong, that he did not intend to harm anyone, and that he would not make the same mistakes ever again.

## MR. DODGE'S PERSONAL HISTORY

Mr. Dodge was born on July 11, 1981 in Chicago, Illinois. As the oldest of five children, Mr. Dodge was forced to grow up very quickly due to the challenges he faced from an early age.

After his parent's divorce, Mr. Dodge and his siblings were primarily raised by their father.  In order to support his family, his father had to work every overtime opportunity available, leaving Mr. Dodge to step in as the caretaker for his younger siblings.  The Dodge family lived in a small home with only two bedrooms, and often struggled to make ends meet.  Growing up in this environment, Mr. Dodge constantly sought out ways to support his family and always prioritized taking care of his loved ones over himself.

Although Mr. Dodge is not a Buffalo native, he developed a love for the city and community that is recognizable by all who know him.  Upon moving to Buffalo, Mr. Dodge made many friends because of his positive spirit and special ability to bring people together. Mr. Dodge's closest friends describe him as a fun, welcoming and uplifting individual, who was always planning social gatherings and events.  Whether it was volunteering at the Shamrock Run, organizing weekly bike rides, or putting on concerts, Mr. Dodge's passion and dedication to his community was inspiring, and he was always able to create a space where people could be themselves unapologetically.

Not only did Mr. Dodge show his love for his community through his planned social events and activities, but he did so through his empathy and loyalty.  Whenever there was a friend in need of support, Mr. Dodge was always there.  Without even thinking about it, Mr. Dodge would provide financial support to friends in need and would always let friends stay with him when they had nowhere else to go.  This genuine kindness and willingness to help even extended to strangers. Mr. Dodge would often help those asking for food or spare change on the street and would even take time out of his day to talk and recognize the humanity in them. Mr. Dodge knows and understands what it is like to have very little and would do everything he could so that other people did not have to struggle like he did.  At the end of the day, Mr. Dodge thrived the most when he

was taking care of those around him.  Unfortunately, this came at the expense of him not knowing how to ask for help himself.

Mr. Dodge has dealt with several personal struggles over the last several years, resulting in him not being the normal Mr. Dodge that his friends know and love.  Mr. Dodge's break up with his long-term girlfriend in 2018, his father's health struggles, and the COVID-19 pandemic took a major toll on his mental health and well-being.  For an outgoing person like Mr. Dodge, his active participation in the community was central to his identity.  When this was suddenly stripped from him during the pandemic, Mr. Dodge started to suffer from depression and withdrew from his social circles.  In a time that was isolating for nearly everyone, Mr. Dodge was especially isolated, having just dealt with the end of a relationship.  Unable to solicit or accept help from anyone, Mr. Dodge unfortunately turned to drugs as a coping mechanism.

Since being incarcerated, Mr. Dodge has taken steps to improve and return to the version of himself he once was.  In efforts to get back into supporting his community, Mr. Dodge has actively participated in Pawsitive for Heroes, an AKC certified dog training program that provides service dogs to veterans.  This has been a healing experience for Mr. Dodge, since he has been an animal lover his whole life and looks forward to adopting a dog once released.  In addition, Mr. Dodge has reconnected with his family since being incarcerated and has built a healthy support system.  Many of those who Mr. Dodge has helped throughout his life will be able to return the favor to him once he is able to return to normal life and begin to build a brighter future.

We respectfully ask the Court to consider Mr. Dodge's reputation as a kind, generous person in his community when choosing his sentence.  This time has allowed Mr. Dodge to reflect on the poor choices he has made, and he is now ready to work hard to make meaningful changes to his life.  Mr. Dodge is eager to rebuild his life and show the Court the person he truly is.

## MR. DODGE'S SUBSTANCE ABUSE

Mr. Dodge's substance abuse is in the past, and he is capable of living a healthy lifestyle as a productive member of society.  After having ankle surgery in 2010, Mr. Dodge was prescribed oxycodone for pain management, and unfortunately, oxycodone became his drug of choice.  When his oxycodone prescription ran out, Mr. Dodge turned to other drugs as a substitute, resulting in the abuse of several other substances.  Mr. Dodge acknowledges that his drug use has had negative impacts on his life and relationships and has been sober since July of 2023.

A long sentence will not benefit Mr. Dodge because he understands his wrongdoings and has already made better decisions to turn his life around.  The people that Mr. Dodge has surrounded himself with are not drug users and will be positive influences while he maintains his sobriety.  Since being incarcerated, Mr. Dodge has attended alcoholics anonymous meetings weekly where he addresses his substance abuse with a psychiatrist.  Mr. Dodge's support system will encourage him to make good decisions upon his release, and he has vowed to not repeat his mistakes.

## MR. DODGE'S ACCEPTANCE OF RESPONSIBILITY

Paragraphs 39 and 40 of the PSR indicate that Mr. Dodge has accepted full responsibility for his crime of conviction. Further, Mr. Dodge reports that he has "extreme remorse for his actions and that he never meant to hurt anyone."  Mr. Dodge's long-time friends indicate in their character letters that Corey is beyond capable of rehabilitation and that this rehabilitation can happen outside of prison.  Krystle Manera, a friend of Mr. Dodge's for 24 years writes:

> "I will be here for Corey when he is released.  Just as he has always been there for me.  I will be there to help him pick up the pieces and move forward toward the great and wonderful life I know he is capable of living.  He has a great support system ready and waiting for him, and we believe in his ability to make positive change."

Mr. Dodge has a remarkable support system waiting for him, and his future has a lot of promise.  Since being incarcerated, Mr. Dodge has had time to reflect on his life and what he hopes his future looks like.  Those closest to Mr. Dodge believe in his ability to succeed in his next chapter and will be there to support him every step of the way.

## LETTERS IN AID OF SENTENCING

Attached hereto as **Exhibit A** are letters counsel received on Mr. Dodge's behalf and are intended to advise the Court of the person he truly is. While Mr. Dodge's close friends and family acknowledge that his choices have led to serious consequences, they all emphasize that these actions are not a true reflection of Mr. Dodge's true character.  Rather, Mr. Dodge has dedicated a majority of his life to helping others, and in his darkest days, was unable to ask others to return the favor.  Now that Mr. Dodge knows that he has an army of support behind him, he will be able to cope in a healthy manner and make better choices.

One of Mr. Dodge's closest friends, Nathan Wagner, describes in his letter that he speaks to Mr. Dodge every month and that he finally recognizes his old friend again.  He writes:

> "Since Corey was arrested, I speak to him every month or so.  He is sober and sounds like the old Corey.  He is most excited when he talks about his dogs that he gets to train at the jail.  He loves them so much.  And while this arrest has forced Corey to face his struggles, he now needs to learn how to apply that in the real world.  Now, we know what he needs, and we can be there for him, like he has been for so many of us throughout the years."

Throughout his life, Mr. Dodge has been a dependable friend to several people, and those people are rallying behind him now that they know he needs it. Oftentimes, the seemingly strongest people among us are struggling in silence.  Now that his loved ones know what he has gone through, he'll be able to thrive once again.

7

## MR. DODGE'S REQUEST FOR A NON-GUIDELINE SENTENCE

As indicated above, Mr. Dodge has shown remorse for his prior criminal acts. He fully understands his action that brought him before Your Honor can never be condoned. While it is doubtful that Mr. Dodge will ever forget the poor choices he has made, we do not ask the Court to overlook what Mr. Dodge did in the past. However, we ask the court to see the person he can be and the improvements he has made to live a healthy lifestyle and be a better man.

In *Booker v. United States*, 543 US 220 (2005) the Supreme Court found that the sentencing Guidelines are only advisory and judges were invited to consider arguments that a Guideline itself may fail to properly reflect the 18 USC §3553(a) factors which can result in unsound judgment by not treating a defendant's characteristics in the proper way or, most important, that a different sentence is appropriate regardless. *Rita v. United States*, 551 US 338, 351 (2007).

In *Pepper v. United States*, 562 US 476, (2011) the United States Supreme Court noted that in sentencing a defendant:

> It has been uniformly constant in the federal judicial system for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Coon v. United States*, 518 U.S. 81, 113 (1996). Underlining this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 US 241, 247 (Pennsylvania, ex. Rel. *Sullivan v. Hase*, 302 U.S. 51, 55 (1937). ("for the determination of sentences justice generally requires consideration of more than the particular acts by which the crime was committed and there be taken into account the circumstances of the offense together with the character and propensities of the offender"). *Heper v. United States*, 562 U.S. 476 (2011).

As is always the case, 18 USC §3553(a)(2) requires that any sentence imposed should reflect the seriousness of the offense: "to promote respect for the law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from crimes of the

defendant; provide the defendant with needed education or vocational training medical care or other correctional treatment in the most effective manner." However, the courts have also held that the likelihood that a defendant will "engage in future criminal conduct [is] a central factor that a district court must assess and impose [a] sentence." *Pepper v. United States, supra* at 492. And as well, the sentencing statute requires that a sentence should be "sufficient but not greater than necessary," to meet the ends of justice and the mandates of §3553(a).

At first glance, it would be easy to judge Mr. Dodge in a vacuum. However, we hope that Mr. Dodge will not, in the future, be defined only by his conduct that brought him in before Your Honor.  Rather, by accepting responsibility and doing what was right, Mr. Dodge has shown that he is a genuinely good person who made poor decisions during a low point in his life. Today, it is evident that Mr. Dodge is eager to do better.  Indeed, it has been suggested that "this court has consistently held that a court's duty is always to sentence the defendant as he stands before the court on the date of sentencing."  *United States v. Core*, 125 F3d 74, 77 (2d Cir., 1997); *United States v. Bryson*, 229 F3d 425, 426 (2d Cir., 2000).

By this sentencing memorandum, counsel is not requesting that the Court, in any way, forgive Mr. Dodge for his poor choices.  While he did not mean to harm anyone, Mr. Dodge understands that his actions had serious consequences.  Since his arrest, Mr. Dodge has committed himself to improvement and has developed plans to live a better life.  Mr. Dodge is capable of being a productive member of society because he has been for most of his life. Therefore, counsel for Mr. Dodge is requesting that he be sentenced to time served with a period of post release supervision to follow.

## MR. DODGE'S TIME IN CUSTODY

Throughout his nearly 22 months already spent in custody, Mr. Dodge has made noticeable improvements to himself and has worked hard to prove that he is capable of making valuable contributions to society. Because of his efforts to become a better person during this difficult time away, counsel asks that Mr. Dodge be sentenced to time served.

Mr. Dodge has been working hard to show his worth and value as a person while incarcerated. First, Mr. Dodge has made positive strides in his education by taking courses through SUNY Niagara County Community College. Mr. Dodge has earned certificates of completion in the following courses: Introduction to Anthropology, Music Appreciation, Writing and Creative Writing. Second, Mr. Dodge has made efforts to live a healthier lifestyle and deal with his substance abuse addiction by attending AA meetings and weekly meetings with his psychiatrist. Third, Mr. Dodge has developed a passion for working with animals by completing a service dog training program through Pawsitive For Heroes. Through this program, Mr. Dodge helped trained dogs who will go on to be service animals to veterans in need of them. Mr. Dodge found self-worth and purpose through this program, as it allowed him to serve his community once again. Mr. Dodge looks forward to pursuing a career where he can work with animals in veterans in the future, as this is a more accurate reflection of the person he truly is.

## CONCLUSION

Corey Dodge is a genuinely good man who has made some unfortunate choices during a dark time in his life. Counsel does not attempt to make any excuses or explanations for his actions, but these acts do not reflect who Mr. Dodge is at heart. As every character letter has indicated, Mr. Dodge has dedicated most of his life to serving others and his community. In several instances, he has put other people's needs above his own and has not had the ability to ask for help when he

needed it the most.  Upon taking the time to reflect while incarcerated, Mr. Dodge has accepted

that he went down a bad path and is ready to start a clean slate upon his release. Counsel asks the

Court to consider who Mr. Dodge once was, who he is today, and the potential he has to make a

meaningful contribution to society in the future.  It is therefore respectfully requested that the Court

sentence Mr. Dodge to time served.


DATED:        Buffalo, New York

                      April 15, 2025



                                            Respectfully submitted,



                                            /s/Justin D. Ginter                                 

                                            JUSTIN D. GINTER., ESQ.
                                            LIPSITZ GREEN SCIME CAMBRIA LLP
                                            *Attorney for Defendant, Corey Dodge*
                                            42 Delaware Avenue, Suite 120
                                            Buffalo, New York 14202
                                            (716) 849-1333